**UNITED STATES of America, Plaintiff,**

v.

**GLENS FALLS INSURANCE COMPANY, Defendant.**

No. 80–CV–868.

United States District Court, N. D. New York.

June 10, 1982.

Gustave J. Di Bianco, U.S. Atty., N.D. New York, Syracuse, N.Y., for plaintiff; George A. Yanthis, Asst. U.S. Atty., Albany, N.Y., of counsel.

Charles E. Snow, Albany, N.Y., for defendant.

MEMORANDUM–DECISION and ORDER

MINER, District Judge.

## I

This is an action to recover for monies allegedly due the Government under the terms of a performance bond issued by defendant as surety for a defaulting contractor. Jurisdiction is founded upon the provisions of 28 U.S.C. § 1345. Before this Court is defendant's motion for an order pursuant to Rule 56 of the Fed. R. Civ. P. granting summary judgment on the ground that the plaintiff failed to commence this action within the applicable statute of limitations period.

## II

On June 28, 1973, the United States Air Force awarded a contract to the Rhein Contracting Corporation of Albany, New York. The contract was for the repair of roofs of base facilities at Plattsburgh Air Force Base, New York. The defendant, Glens Falls Insurance Company (hereinafter "Surety"), as surety for the contractor Rhein Contracting Corporation (hereinafter "Rhein"), executed a performance bond on July 11, 1973 for the penal sum of $158,000 to secure performance of the contract. The terms of this performance bond provide that the obligations of the Surety will be void and of no effect only if the principal, Rhein, performs all the terms and conditions of the contract.

Although the exact date is contested, it is uncontroverted that Rhein was in default, and consequently in breach, of this contract. Defendant Surety alleges that Rhein was in default as early as June 12, 1974, when it was 51% behind schedule, and as late as September 27, 1974, when the Government denied Rhein's request for an extension of time to cure its unacceptable performance. However, it is the Surety's position that, regardless of which date is applicable, the Government failed to bring suit within the appropriate six-year statute of limitations, since the Government commenced this action on October 28, 1980 and the last possible date of Rhein's breach was on September 27, 1974. *See United States v. Skidmore, Owings and Merrill,* 505 F.Supp. 1101 (S.D.N.Y. 1981).

Although not contesting this view, the Government contends that the action accrued again on September 2, 1977, when, by letter, the Surety acknowledged the debt and forwarded a check in the amount of $65,482.52 which was accepted by the Government as partial payment. The Surety opposes this argument and claims that the forwarded check did not represent "a compromise settlement of this claim" but instead "constitutes its full obligation to the Government." (Letter of September 2, 1977 from the Surety to the Government). Therefore, since there has been neither par-

tial payment nor written acknowledgment of the debt, the Surety argues, the right of action cannot be deemed to accrue again on September 2, 1977 and the action must fail as untimely.

## III

The appropriate statute here, 28 U.S.C. § 2415(a), provides in part that:

[E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later: *Provided,* That in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment.

It is clear that this action would be barred unless the September 2, 1977 letter and proffered check fits within the proviso of the statute. Thus, the question narrows to whether the letter and check can be considered "partial payment or written acknowledgment of debt."

■ The legislative history surrounding this statute demonstrates a Congressional intent to adopt a familiar common law precept. "This provision embodies a familiar principle of law which is embodied in the law of many States. The obligation of a debt will continue where a debtor has acknowledged the debt and indicated his willingness to discharge the obligation." S. Rep. No. 1328, 89th Cong. 2d Sess. 5, *reprinted in* [1966] U.S. Code Cong. & Ad. News 2502, 2504.

■ Generally, in the common law, where a debt is acknowledged in a writing, the law raises a new promise by the debtor to pay his existing debt. *Scheuer v. Scheuer,* 308 N.Y. 447, 451, 126 N.E.2d 555 (1955). This new promise is enforceable because it is supported by the existing legal duty of the promisor. In such a situation, the creditor's remedy is not barred by the statute of limitations period until the lapse of the full period commencing with the time of the new promise. The time for enforcement thus is extended. Moreover, although not the case here, if a debtor makes a new promise to his creditor to pay a debt that has already become unenforceable by operation of a statute of limitations, the promise is enforceable, without any new consideration, in accordance with its own terms. "It is supported by the 'past consideration'. Though the debtor was protected by a legal bar, he is regarded as still under a moral obligation to pay the barred debt." *Corbin on Contracts* (West ed.) § 214. *Mattingly v. Boyd,* 2 How. (61 U.S.) 128, 15 L.Ed. 845 (1858); *Shepherd v. Thompson,* 122 U.S. 231, 7 S.Ct. 1229, 30 L.Ed. 1156 (1887); *Imperial Point Colonnades Condominium, Inc. v. Mangurian,* 407 F.Supp. 870 (S.D. Fla. 1976).

■ However, to extend the enforcement time beyond the statutory period, the acknowledgment in the writing must be unequivocal and must express an intention on the part of the debtor to pay. *Lew Morris Demolition Co. v. Board of Education,* 40 N.Y.2d 516, 387 N.Y.S.2d 409, 355 N.E.2d 369 (1976). Indeed, an offer to compromise or settle a debt for a lesser amount does not ordinarily constitute an acknowledgment of an indebtedness implying an intent or promise to pay sufficient to toll the limitations period. *Levin v. Noble,* 269 A.D. 808, 55 N.Y.S.2d 443 (4th Dep't. 1945). *See generally* 9 N.Y. Jur., Contracts § 111; 36 N.Y. Jur., Limitations and Laches §§ 132, 133.

■ Similarly, at common law, part payment of a debt starts the statute of limitations running anew in that part payment is tantamount to a voluntary acknowledgment of the existence of the debt, from which the law implies a new promise to pay the balance. Therefore, whether part payment takes a case out of the statute of limitations depends on the intention of the debtor. *United States v. Wilder,* 13 Wall. (80 U.S.) 254, 20 L.Ed. 681 (1872). It must

**646**

be shown that there was part payment of an admitted debt, made and accepted in circumstances where an unequivocal promise may be inferred to pay the remainder of the debt. *Lopez Lanza v. Garco Export, Inc.,* 30 A.D.2d 955, 294 N.Y.S.2d 234 (1st Dep't 1968). Thus, it is the intent of the debtor when he made the payment, not the intention of the creditor when he received the payment, that is the crucial inquiry here. *See generally,* 36 N.Y. Jur., Limitations and Laches § 143.

In this action it is clear that the September 2 letter cannot be considered an acknowledgment of the debt sufficient to imply a new promise to pay the balance. Indeed, the letter manifests a clear intention that the enclosed check would expunge the entire debt. Correspondingly, it is also clear that the proffered payment itself only represents the Surety's desire to pay in full. Thus, from the viewpoint of the debtor, there was no part payment and, therefore, there is no implied new promise upon which to start the statute of limitations running anew.

### IV

Accordingly, defendant's motion is hereby granted.

It is so Ordered.